# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2020 Term**

_____

No. 18-0481

_____

**FILED**

**June 1, 2020**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
Plaintiff Below, Respondent

**V.**

**KRISTAFER AVERY BLECK,**
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Jefferson County
The Honorable Bridget Cohee, Judge
Criminal Action No. CC-19-2017-F-88

**AFFIRMED**

_____

Submitted: February 19, 2020
Filed: June 1, 2020

James T. Kratovil                          Patrick Morrisey
Kratovil Law Offices PLLC        Attorney General
Charles Town, West Virginia     Lara K. Bissett
Attorney for the Petitioner         Assistant Attorney General
                                                   Charleston, West Virginia
                                                   Attorneys for the Respondent

**JUSTICE JENKINS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands."  Syllabus point 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997).


2.      "Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review."  Syllabus point 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982).


3.      "When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined."  Syllabus point 8, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

**Jenkins, Justice:**

Petitioner Kristafer Avery Bleck ("Mr. Bleck") appeals from an order[1] of the Circuit Court of Jefferson County that sentenced him to one term of not less than one year nor more than five years, one term of not less than two years nor more than ten years, and one term of not less than one year nor more than fifteen years.[2] In particular, Mr. Bleck asserts that the circuit court erred in considering an alleged previously expunged charge[3] during his sentencing hearing and in denying him probation. The State responds that Mr. Bleck failed to timely object in the proceeding below and that, even if he had timely objected, a circuit court's consideration of an expunged charge is not an impermissible factor. After a careful review of the briefs submitted by the parties, the record submitted on appeal, the oral arguments presented to this Court, and the applicable case law, we find that Mr. Bleck waived his objection, and we affirm the circuit court's April 27, 2018 sentencing order. This Court need not and does not address whether the circuit court considered an impermissible factor during sentencing.

---

[1] We note that in their respective briefs both parties argue that Mr. Bleck is appealing the denial of his West Virginia Rules of Criminal Procedure Rule 35 motion for reconsideration of his sentence that he filed on April 16, 2018. For example, in Mr. Bleck's brief he states that the law governing the issue before the Court is Rule 35(a). Similarly, the State specifically states that Mr. Bleck is appealing the denial of his Rule 35(a) motion. However, upon examination of the notice of appeal, it provides Mr. Bleck is actually appealing his sentencing order entered on April 27, 2018, not the denial of the Rule 35(a) motion. In fact, the notice of appeal in this case was filed several days prior to the circuit court's final order on the Rule 35(a) motion.

[2] The three sentences were ordered to run concurrently.

[3] The alleged previously expunged charge was a domestic assault charge from 2010.

# I.

## FACTUAL AND PROCEDURAL HISTORY

In April of 2017, the grand jury of Jefferson County indicted Mr. Bleck on one count of first degree robbery, one count of felony conspiracy, one count of assault in the commission of a felony, and one count of burglary.[4] Subsequently, on January 26, 2018, the State extended a plea agreement to Mr. Bleck wherein he would plead "no contest" to count two of the indictment charging felony conspiracy; count three of the indictment charging assault in the commission of a felony; and count four of the indictment charging burglary. In exchange for the no contest plea, the State agreed to dismiss count one of the indictment charging robbery in the first degree. The State also agreed that it would recommend that Mr. Bleck

> be sentenced to the penitentiary for not less than one year nor more than five years for his conviction of Felony Conspiracy, not less than two years nor more than ten years for his conviction of Assault in the Commission of a Felony, and not

---

[4] During the plea hearing, the State laid the following factual foundation regarding the underlying events leading to the indictment. On March 14, 2016, the victim, Mr. Farmer, heard a knock at his door. Mr. Farmer then saw two men kicking in his door and breaking into his home. The two men "immediately pounced on Mr. Farmer." There was punching and kicking. One of the two men, Mr. Hess, was wearing a clown mask, but the other, Mr. Bleck, was not. While most of the injuries suffered by Mr. Farmer were inflicted by Mr. Hess, Mr. Bleck was the one who took a "knife to Mr. Farmer's throat and held him down and threatened to kill him." Eventually, Mr. Bleck and Mr. Hess left the home with a "shotgun and safe which contained the handgun." Furthermore, the entire encounter was witnessed by Mr. Farmer's young son. Mr. Bleck admitted to most of the events described above and further admitted that he had "got[ten] high" on crack cocaine prior to committing the acts with Mr. Hess. Additionally, at the sentencing hearing, Mr. Farmer testified regarding his injuries as a result of the incident. Mr. Farmer stated that he sustained several injuries, including a laceration to his wrist, a laceration to his chin, and a laceration to his head. He had to receive multiple stitches and staples. The circuit court also noted that Mr. Farmer had a laceration to his throat.

less than one year nor more than fifteen years for his conviction
of Burglary.

Furthermore, the State agreed to recommend that Mr. Bleck's sentences run concurrently rather than consecutively. In other words, the State agreed to recommend "an overall sentence of not less than two years nor more than fifteen years in the penitentiary." The plea agreement, signed by Mr. Bleck, further agreed to "waive[] his right to appeal his conviction and any lawful sentence imposed in a lawful manner to the West Virginia Supreme Court of Appeals." The plea agreement indicated that Mr. Bleck may not request deferred adjudication but that he may request any sentence authorized by law, including concurrent sentences, alternative sentences, or a combination thereof. Moreover, it provided that Mr. Bleck understood that the circuit court retained sentencing discretion.

Mr. Bleck pled no contest to one count of felony conspiracy, one count of assault in the commission of a felony, and one count of burglary on January 31, 2018. Subsequently, in February of 2018, the circuit court entered a conviction order acknowledging that it had reviewed the terms of the plea agreement with Mr. Bleck and that he understood the plea agreement's terms. The conviction order further provided that, during the plea hearing, Mr. Bleck "acknowledged that the [court] does not have to follow the State's sentencing recommendation and [Mr. Bleck] could not withdraw his plea for that reason." The circuit court found that Mr. Bleck "underst[ood] the terms of the plea agreement, the nature and consequences of the pleas, that there is a factual basis and

3

foundation for the tendered pleas, and that [Mr. Bleck] tendered the pleas intelligently, knowingly, and voluntarily."

On March 23, 2018, the pre-sentence[5] investigation ("PSI") report was prepared and was subsequently filed with the circuit court on March 28, 2018. The PSI report contained information showing that, on September 28, 2010, Mr. Bleck was arrested for domestic assault and obstruction of an officer. The PSI report further noted that, on April 4, 2011, Mr. Bleck pled no contest to the obstruction of an officer charge and was assessed a fine; the domestic assault charge was dismissed.

Prior to the sentencing hearing, Mr. Bleck filed a motion for probation on April 3, 2018, arguing, among other things, that he had no prior felony convictions, he was gainfully employed, he had a low risk of reoffending, he was not a danger to the community, his continued supervision by probation was the most effective course of rehabilitation, and his three misdemeanor convictions were many years ago.

On April 9, 2018, the circuit court held a sentencing hearing. During the sentencing hearing, Mr. Bleck's counsel acknowledged receipt of the PSI report.[6] The

---

[5] The document is actually labeled "pre-plea investigation report," but for all intents and purposes, it was a pre-sentence investigation report.

[6] Specifically, the following exchanged occurred:

4

circuit court inquired if there were any material inaccuracies to the PSI report. Mr. Bleck's counsel affirmatively stated that there were objections to the PSI report. In particular, Mr. Bleck's counsel moved to amend "Section II., A." of Mr. Bleck's PSI report, which referred to law enforcement's narrative of the version of events as found in the official complaint. Mr. Bleck took issue with the statement that he had traded a shotgun for crack cocaine. The State responded that that particular statement came from the police report and that it could not be amended. The circuit court essentially did not amend that section of the PSI report but noted that Mr. Bleck corrected that statement. After resolving Mr. Bleck's objection, the circuit court again asked the parties if there were "[a]ny other material inaccuracies with the PSI[.]" Mr. Bleck's counsel stated "[n]o, [y]our [h]onor."[7] Mr. Bleck did not object to any other information contained in the PSI report, including the reference to the 2010 domestic assault charge, and he himself informed the circuit court that he did not have any reason why his sentence should not be pronounced at that time.

The circuit court then allowed testimony and presentation of evidence by both parties. Mr. Bleck's mother and wife testified on his behalf. The victim also testified.

---

The Court: We are set today for our sentencing hearing in this matter.

Have the parties received a copy of the pre-plea investigation report prepared by probation?

[Mr. Bleck's Counsel]: The defense has.

[7] Mr. Bleck's counsel did indicate that he previously had requested clarification about the amount of restitution, but eventually agreed to the figure listed.

Once again, Mr. Bleck requested alternative sentencing in the form of probation. In response, the circuit court stated the following:

> I do believe that I have considered all of the factors which are relevant to the imposition of sentence. I have taken into consideration the PSI and also the testimony today; the statements made by Mr. Bleck's mother and wife and the testimony given by the victim in this case; and I find based upon the fact that this was a crime of violence with a laceration to the throat, if this was the first violent act of the Defendant *I might consider probation*, but we had a 2010 domestic assault that was also part of our record in the PSI[.] I do find that the State has granted a plea agreement that gives Mr. Bleck the benefit of him accepting responsibility *but he still needs to serve some time for his conduct in this event*.

(Emphasis added). The circuit court then sentenced Mr. Bleck to serve the following three concurrent terms of incarceration: not less than one year nor more than five years for his conviction of felony conspiracy, not less than two years nor more than ten years for his conviction of assault in the commission of a felony, and not less than one year nor more than fifteen years for his conviction of burglary. The circuit court further ordered him to pay $1,236.54 in restitution. An order committing Mr. Bleck to the custody of the Department of Corrections was entered that same day.

Before the filing of the written sentencing order memorializing the circuit court's ruling from the April 9 hearing, on April 16, 2018, Mr. Bleck filed "Defendant's Motion for and Memorandum in Support of the Reconsideration of Sentence" pursuant to Rule 35 of the West Virginia Rules of Criminal Procedure, and once again requested probation. Mr. Bleck made several arguments in his motion, including his contention that

6

the circuit court improperly considered his domestic assault charge from 2010 because it allegedly had been previously expunged. In particular, Mr. Bleck asserted that if "[t]he [circuit c]ourt [had] found that had this been [his] first violent offense, he would have been granted probation. However, because [his] criminal record showed a prior domestic violence arrest in 2010, the [circuit c]ourt [had] sentenced him to the penitentiary."[8] Mr. Bleck further argued that "[b]y holding [his] 2010 arrest for domestic assault against him and thereby sentencing him to confinement because of this allegedly violent history, the [circuit c]ourt relied on an impermissible factor in violation of W. Va. Code [section] 61-11-25."[9] In support of his argument, Mr. Bleck attached a single letter from the Berkeley County Magistrate Clerk stating that there is no record of a domestic assault charge pursuant to West Virginia Code section 61-11-25. We note that Mr. Bleck did not produce below any order of expungement or any information, such as when and where the expungement was obtained.

On April 27, 2018, the circuit court entered a sentencing order reflecting its decision at the April 9 sentencing hearing. The sentencing order specifically stated that in sentencing Mr. Bleck, the circuit court considered the PSI report; the evidence presented;

---

[8] Significantly, this is an incorrect statement. The circuit court judge clearly stated during the sentencing that "I *might consider* probation." (Emphasis added).

[9] West Virginia Code section 61-11-25 (LexisNexis 2014) provides for the expungement of certain criminal records for charges that have been dismissed and for orders sealing the court records concerning the dismissed charges once expungement has been granted.

and statements and sentencing recommendations of the parties. Ultimately, the circuit court adopted its previously noted sentence of essentially not less than two nor more than fifteen years of incarceration. The circuit court noted its denial of Mr. Bleck's request for probation. The order further incorporated by reference all findings of fact and conclusions of law made on the record in support of its decision to deny Mr. Bleck's request for probation. The sentencing order did not rule on or mention the motion for reconsideration.[10] Mr. Bleck appeals from the April 27, 2018 sentencing order.

## II.

## STANDARD OF REVIEW

This Court previously has articulated the standard of review that applies to our consideration of sentencing orders on appeal: "The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997). Additionally, we have consistently held that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982). *See also* Syl. pt. 3, *State v. Georgius*, 225 W. Va.

---

[10] On June 4, 2018, after the filing the notice of appeal in the instant matter, the circuit court denied the Rule 35 motion for reconsideration of sentence without a hearing.

8

716, 696 S.E.2d 18 (2010) (per curiam).  With this governing standard in mind, we turn to the parties' arguments.

## III.

## DISCUSSION

Mr. Bleck raises a single issue on appeal:  whether the circuit court abused its discretion in using an expunged charge in its decision to incarcerate him instead of placing him on probation.[11]  Essentially, Mr. Bleck is arguing that the circuit court erred by relying on an allegedly previously expunged charge of domestic violence—as noted in the PSI report—in its decision as to whether it was going to grant Mr. Bleck probation. The State argues that Mr. Bleck failed to object timely to the circuit court's decision in the proceeding below.[12]  We agree with the State that Mr. Bleck has waived his sole assignment of error.

---

[11] Mr. Bleck states in passing in his sole assignment of error that the circuit court abused its discretion in considering a dismissed charge during sentencing.  He does not offer any argument on this point in his brief or reply, so we will not consider the issue. *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but [which] are not supported with pertinent authority, are not considered on appeal.").

[12] The State further argues that even if Mr. Bleck had timely objected, a circuit court's consideration of an expunged charge is not an impermissible factor in determining what sentence to impose.  However, because we find that Mr. Bleck has waived his assignment of error, we need not decide this.

We recognize that a criminal "defendant has a due process right to be sentenced on the basis of accurate information. *Fox v. State*, 176 W. Va. 677, 682, 347 S.E.2d 197, 202 (1986). *See United States v. Tucker*, 404 U.S. 443, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972)." *State v. Craft*, 200 W. Va. 496, 499, 490 S.E.2d 315, 318 (1997). However, we have found that a criminal defendant may affirmatively waive this right by a failure to object at the time of sentencing. *See State v. Proctor*, 227 W. Va. 352, 360, 709 S.E.2d 549, 557 (2011) (per curiam), *disapproved on other grounds by State v. Marcum*, 238 W. Va. 26, 33 n.13, 792 S.E.2d 37, 44 n.13 (2016) ("In summary, the record shows that the appellant never objected prior to his sentencing hearing to any of the reports of which he now asserts contained material misstatements of fact. Moreover, counsel for the appellant indicated that he had reviewed the documents prior to sentencing. . . . In light of the aforementioned, the appellant waived this assignment of error.").[13]

---

[13] Other courts also have found waiver to be applicable in similar circumstances. For example, in *Reiger v. State*, 908 A.2d 124 (Md. Ct. Spec. App. 2006), the appellant argued that "a defendant need not lodge a contemporaneous objection to the sentencing court's consideration of improper evidence or impermissible factors in order to preserve his right to appellate review of that sentence." *Id.* at 127-28. However, after examining several cases, the court held that "an objection is required to prevent waiver in these circumstances." *Id.* at 128. The court concluded "that the same waiver rules and rationales govern" a sentencing court's consideration of impermissible factors as well as its consideration of improper evidence. *Id. See also Com. v. Garrison*, 437 A.2d 407, 409 (Pa. Super. Ct. 1981) ("Appellant contends that his father's statement concerning Appellant's involvement with drugs unduly influenced the court at the time of sentencing and that, because this statement was unsubstantiated, it was an impermissible factor to consider. We note that neither Appellant nor his attorney objected at the sentencing hearing to the father's statement concerning drugs. This issue has therefore been waived. *Piernikowski v. Cardillo*, 263 Pa. Super. 202, 397 A.2d 817 (1979); *Nobel v. West Penn Power Co.*, 36 Pa. Cmwlth. 577, 388 A.2d 781 (1978)."); *State v. McDowell*, 763 N.W.2d 247 (Wis. Ct. App. 2009) ("There is no question but that a defendant has a due process right to be sentenced on the basis of accurate information. . . . A defendant can, however,

10

With regards to the waiver doctrine, we have held that "[w]hen there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined." Syl. pt. 8, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). Initially, we must examine the relevant rules regarding sentencing procedure and the timing of objections to the contents of a PSI report. Rule 32(b)(6)(B) of the West Virginia Rules of Criminal Procedure, in relevant part, requires that "[w]ithin a period prior to the sentencing hearing, to be prescribed by the court, the parties *shall* file with the court any objections to any material information contained in or omitted from the presentence report." (Emphasis added). Additionally, Rule 32(b)(6)(C) provides that: "[e]xcept for any unresolved objection under subdivision (b)(6)(B), the court may, at the hearing, accept the presentence report as its findings of fact. For good cause shown, the court may allow a new objection to be raised at any time before imposing sentence."[14] Consequently, the

_____

waive this right by failing to contest the accuracy of information presented at the sentencing hearing, even if the circuit court subsequently relies on the inaccurate information." (internal quotations and citations omitted)).

[14] *See also* W. Va. R. Crim. P. 32(c)(1) ("Sentencing Hearing. *At the sentencing hearing, the court must afford counsel for the defendant and for the state an opportunity to comment on the probation officer's determinations and other matters relating to the appropriate sentence, and must rule on any unresolved objections to the presentence report.* The court may, in its discretion, permit the parties to introduce testimony or other evidence on the objections. For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not effect [sic], sentencing. A written record of these findings and determinations must be appended to any copy of the presentence report made available to the Board of Parole." (emphasis added)).

11

West Virginia Rules of Criminal Procedure make absolutely clear that the appropriate time to object to any portion of a pre-sentence report is prior to the sentencing hearing, or at the very least, for good cause, prior to the imposition of sentence.[15]

[15] Likewise, the West Virginia Trial Court Rules provide for similar provisions. Specifically, Rule 43.01 of the West Virginia Trial Court Rules requires:

> (a) In all cases where a presentence investigation report is prepared pursuant to W. Va. R. Crim. P. 32 and W. Va. Code § 62-12-7 or where the report is otherwise ordered by the court, the probation officer shall disclose the presentence investigation report to the defendant and to counsel for the defendant and to the attorney for the State not less than ten (10) calendar days prior to sentencing. *Within five (5) calendar days thereafter, the parties by counsel shall communicate to the probation officer any objections they may have as to material information, any fact that was either not included or was stated erroneously, or as to the law, or sentencing alternatives and classifications. The communication shall be in writing with a copy served upon opposing counsel or an unrepresented defendant contemporaneously with service upon the probation officer.*

> (b) After receiving objections, the probation officer may conduct further investigation and make revisions to the presentence report that may be necessary. The officer may require counsel to meet with the officer to discuss unresolved factual and legal issues. Not less than three (3) calendar days prior to sentencing, the probation officer shall submit the presentence report to the sentencing judge. The report shall be accompanied by an addendum setting forth objections that have not been resolved, together with the officer's comments and recommendations. The probation officer shall certify that the contents of the report, including revisions and the addendum, have been disclosed to the defendant and to counsel for the defendant and the State, and that the addendum fairly states any remaining objections.

> (c) *With the exception of an objection under subsection (a) that has not been resolved, the presentence investigation report*

Furthermore, this Court specifically considered a defendant's waiver of the due process right to be sentenced on the basis of accurate information in *State v. Proctor*, 227 W. Va. 352, 709 S.E.2d 549 (2011) (per curiam), *disapproved on other grounds by State v. Marcum*, 238 W. Va. 26, 33 n.13, 792 S.E.2d 37, 44 n.13 (2016). In that case, the defendant argued that "the circuit court erred when it denied his motion for a reduction of his sentence . . . based upon misstatements of fact in the sheriff's report, the presentence report, and psychological evaluation considered as a part of his sentencing for the underlying crimes." 227 W. Va. at 357-58, 709 S.E.2d at 554-55 (footnotes omitted). The defendant further contended that "his sentence should be reconsidered because it was based upon material misstatements of fact." *Id.* at 358, 709 S.E.2d at 555. Conversely, the State argued that

> because the appellant knew, or should have known, prior to the sentencing hearing about the alleged misstatements in the numerous reports, and had in his possession all of the documents in question, as well as the taped interview with the victim, but did not object to anything at sentencing, he has waived this assignment of error.

*Id.*

---

> *may be accepted by the court as accurate.* For good cause, however, the court may allow additional objections to be raised at any time before the imposition of sentence. In resolving disputed issues of fact, the court may consider relevant information without regard to its admissibility under the rules of evidence, provided it otherwise has sufficient indicia of reliability.

W. Va. Trial Ct. R. 43.01 (emphasis added).

13

The *Proctor* Court stated that we

> [h]a[ve] consistently held that "silence may operate as a waiver of objections to error and irregularities at the trial which, if seasonably made and presented, might have been regarded as prejudicial." *State v. Grimmer*, 162 W. Va. 588, 595, 251 S.E.2d 780, 785 (1979), *overruled on other grounds by State v. Petry*, 166 W. Va. 153, 273 S.E.2d 346 (1980). The raise or waive rule is designed "to prevent a party from obtaining an unfair advantage by failing to give the trial court an opportunity to rule on the objection and thereby correct potential error." *Wimer v. Hinkle*, 180 W. Va. 660, 663, 379 S.E.2d 383, 386 (1989).

227 W. Va. at 359, 709 S.E.2d at 556. Additionally, as to the waiver doctrine, the *Proctor*

Court explained that:

> "Our cases consistently have demonstrated that, in general, the law ministers to the vigilant, not to those who sleep on their rights. . . . *When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time.* The pedigree for this rule is of ancient vintage, and it is premised on the notion that calling an error to the trial court's attention affords an opportunity to correct the problem before irreparable harm occurs. There is also an equally salutary justification for the raise or waive rule: It prevents a party from making a tactical decision to refrain from objecting and, subsequently, should the case turn sour, assigning error (or even worse, planting an error and nurturing the seed as a guarantee against a bad result). *In the end, the contemporaneous objection requirement serves an important purpose in promoting the balanced and orderly functioning of our adversarial system of justice.*"

*Id.* at 360, 709 S.E.2d at 557 (quoting *State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996)) (emphasis added). Accordingly, this Court in *Proctor* found that the defendant "did not object to the reports ***during the sentencing hearing*** even though he

14

stated on the record that he had read the reports prior to the hearing" and so, based on that representation, he had waived the assignment of error. 227 W. Va. at 359, 360, 709 S.E.2d at 556, 557.

This application of the waiver doctrine was again used in *State v. Rogers*, No. 14-0373, 2015 WL 869323 (W. Va. Jan. 9, 2015) (memorandum decision). The *Rogers* Court determined:

> The record on appeal is clear that petitioner received a copy of the pre-sentence investigation report on January 31, 2013, well in advance of the February 18, 2014, sentencing hearing. It is beyond cavil that he had ample opportunity to object to the report either prior to or during the sentencing hearing. *See W. Va. R. Crim. P.* 32. He failed to do so. To the contrary, during sentencing, when the circuit court directly inquired of both petitioner and his counsel as to whether they had reviewed the pre-sentence investigation report, whether they had any corrections or additions to make to the report, and whether they found it to be accurate, they acquiesced to the contents of the report without equivocation and without objection on any grounds. Given these facts, we conclude that the circuit court did not abuse its discretion in denying petitioner's motion for reconsideration of sentence.

*Id.* at *3 (footnotes omitted).

In the present matter, Mr. Bleck argues that "[i]t goes without saying that the pre-sentence report should be accurate and reflect the true nature of the Defendant's record. The pre-sentence report in this case was based upon faulty information[,] and the judge relied upon that faulty information in her decision." It is undisputed that Mr. Bleck failed to raise the issue presently before us prior to or at any point during the sentencing hearing.

15

It is further undisputed that the PSI report that contained the information regarding the 2010 domestic assault charge was prepared on March 23, 2018, and filed on March 28, 2018. The sentencing hearing did not occur until April 9, 2018. Accordingly, the record demonstrates, and Mr. Bleck does not dispute, that he had the chance to review the PSI report several days prior to the sentencing hearing. Furthermore, there is no evidence in the record that any written objections were filed prior to the sentencing hearing.

Additionally, during the sentencing hearing, the circuit court explicitly inquired as to whether the parties had received the PSI report, and Mr. Bleck's counsel affirmatively stated that he had. The circuit court then gave the parties an opportunity to orally object to any material inaccuracies contained within the PSI report prior to pronouncing the sentence. Mr. Bleck's counsel did, in fact make an objection demonstrating that he had reviewed the PSI report prior to the sentencing hearing. Despite the challenge to the PSI report, not only did Mr. Bleck fail to object to the inclusion of the 2010 domestic assault charge, but he also made no attempt to correct the PSI report or inform the circuit court that the charge had been expunged. Consequently, Mr. Bleck knowingly and intelligently made no objection or attempt to inform the circuit court that the 2010 domestic charge noted in the PSI report had been expunged despite numerous opportunities to do so.[16] Accordingly, in light of the above analysis and the narrow facts

_____

[16] Importantly, we note that it is not an insignificant process to obtain an expungement of a previous charge that has been dismissed. In order to obtain an expungement of a charge that has been dismissed, one must follow the procedure set forth in West Virginia Code section 61-11-25. Specifically, an individual must file a petition in

16

of this particular matter, we conclude that Mr. Bleck has waived his sole assignment of error.

## IV.

## CONCLUSION

Accordingly, for the reasons stated above, we affirm the sentencing order of the Circuit Court of Jefferson County entered on April 27, 2018.

Affirmed.

---

circuit court. *Id.* The circuit court then may set a hearing on the petition. *Id.* Finally, the circuit court will ultimately either grant or deny the petition for expungement and issue an order. *Id.* Additionally, the record before us is devoid of any evidence or contention that Mr. Bleck was unaware until after he was sentenced in the underlying matter that the 2010 domestic assault charge had been expunged. Accordingly, the record before us demonstrates that if Mr. Bleck had gone through this expungement process to have his 2010 domestic assault charge expunged, he would have known prior to or during the sentencing hearing that the 2010 domestic assault charge had been expunged.

17